ELECTRONICALLY FILED
4/16/2021 12:31 PM
06-CV-2021-900012.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

JOHN DOE, as father and next friend )
of JANE DOE, on behalf of herself and )
all others similarly situated; )
     )
       PLAINTIFF, )
     )
v. )    Case No.: _____
     )
WILLIAM LEE HOLLADAY, III; )
DEBORAH IRBY HOLLADAY; )
WILLIAM RICHARD CARTER, JR.; )
GREGORY EARL CORKREN; )
DAVID WEBB TUTT; )
THOMAS MICHAEL SISK; )
TUTT EDUCATIONAL SERVICES, LLC; )
SAGE PROFESSIONAL DEVELOPMENT, )
LLC; INTEGRA VENTURES, LLC; AND )
EDUCATIONAL OPPORTUNITIES AND )
MANAGEMENT LLC, )
     )
       DEFENDANTS. )

```
┌─────────────┐
│   EXHIBIT   │
│      2      │
└─────────────┘
```

## COMPLAINT

COMES NOW, JANE DOE, by and through JOHN DOE, her father and next friend, brings

this action both individually and on behalf of the class of persons defined below, and files this

Complaint against Defendants, William Lee Holladay, III, Deborah Irby Holladay, William

Richard Carter, Jr., Gregory Earl Corkren, David Webb Tutt, Thomas Michael Sisk, Tutt

Educational Services, LLC, Sage Professional Development, LLC, Integra Ventures, LLC, and

Educational Opportunities and Management LLC, and, in support thereof, states as follows:

### INTRODUCTION

In a scheme dating back years, the six Defendants stole the identities of hundreds of

students in order to wrongfully enroll them in a virtual program without their, or their parents',

1

knowledge. They then funneled millions of dollars from the State of Alabama into their own pockets through a series of shell companies. Barbour County was at the epicenter of this scheme.

Trey Holladay, former Athens City Schools ("ACS") Superintendent, colluded with others, including his wife, to commit identity theft. The conspirators included: Gregory Earl Corkren, Deborah Irby Holladay, William Richard Carter, Jr., David Webb Tutt, and Thomas Michael Sisk. The scheme was to line their pockets by forming limited liability corporations that could be used to contract with the Athens Renaissance virtual program (the "Virtual Program") of ACS. Defendants offered incentives of technology and web-based educational resources, as well as fringe benefits and perks to private schools with minimal means in exchange for private student information, including dates of birth, addresses and Social Security identification numbers.

Defendants used this stolen private and sensitive personal information, all without their parents' knowledge, to enroll those students into the ACS's student information management database for the sole purpose of creating the façade that the private school students were full-time non-resident virtual students of the Virtual Program, when in actuality, they were not. Defendants even created false addresses for students stolen from vacant homes advertised on real estate websites.

Defendants deliberately deceived the State of Alabama by falsely showing students to have un-enrolled from their private schools before enrolling in the Virtual Program. Private school report cards were also modified to omit students' private school names and were filed as though students had earned grades through ACS. Many of the students are here in Barbour County.

As a result of Defendants' carefully planned scheme to prey on innocent students and to steal their identities, falsify educational documents and State records, betray Alabama parents of students with lies and deception, and justify their behavior to line their own financial pockets, the

individual Defendants and Defendant companies received millions of dollars. This lawsuit seeks justice for these children and their families.

**PARTIES**

1.      Plaintiff, John Doe, (hereinafter referred to as "Plaintiff") is over the age of nineteen (19) years and is a resident of Clark County, Alabama.

2.      Plaintiff, Jane Doe, a minor, (hereinafter referred to as "Plaintiff") is under the age of nineteen (19) years and is a resident of Clark County, Alabama. She brings this case on behalf of herself and a Putative Class of similarly-situated minors.

3.      Defendant, William Lee Holladay, III (hereinafter "Trey Holladay"), is above the age of nineteen (19), and is a resident of Limestone County, Alabama.

4.      Defendant, Deborah Irby Holladay (hereinafter "Deb Holladay"), is above the age of nineteen (19), and is a resident of Limestone County, Alabama.

5.      Defendant, William Richard Carter (hereinafter "Carter"), is above the age of nineteen (19), and is a resident of Limestone County, Alabama.

6.      Defendant, Gregory Earl Corkren (hereinafter "Corkren"), is above the age of nineteen (19), and is a resident of Tuscaloosa County, Alabama.

7.      Defendant, David Webb Tutt (hereinafter "Tutt"), is above the age of nineteen (19), and is a resident of Marengo County, Alabama.

8.      Defendant, Thomas Michael Sisk (hereinafter "Sisk"), is above the age of nineteen (19), and is a resident of Limestone County, Alabama.

9.      Defendant, Tutt Educational Services, LLC, is a domestic limited liability corporation registered with the Alabama Secretary of State. Its members are: David W. Tutt.

10.     Defendant, Sage Professional Development, LLC, is a domestic limited liability corporation registered with the Alabama Secretary of State. Its members are: Deborah Holladay.

11.     Defendant, Integra Ventures, LLC, is a domestic limited liability corporation registered with the Alabama Secretary of State. Its members are: Keith Womack.

12.     Defendant, Educational Opportunities and Management LLC, is a domestic limited liability corporation registered with the Alabama Secretary of State. Its members are: Gregory Corkren.

### JURISDICTION AND VENUE

13.     Paragraphs 1 through 12 are incorporated herein as if set out in full.

14.     Given the amount in controversy and the nature of the claims plead *infra*, this Court has subject matter jurisdiction over this matter.

15.     This Court has personal jurisdiction over all Defendants as they do business directly with Plaintiff and the Putative Class in this county and state.

16.     Removal to the U.S. District Court for the Middle District of Alabama is inappropriate as all Parties are citizens of the State of Alabama; the recovery sought, exclusive of interest and costs, likely does not exceed five million dollars; the primary Defendants are state officials; the number of affected individuals is likely more than fifteen (15); and the Discretionary Exception applies inasmuch as this action has been brought in a forum with a distinct nexus to the Putative Class. The Local and Home-State Controversy Exceptions also apply inasmuch as all Plaintiffs and Defendants are residents of Alabama.

STATEMENT OF FACTS

17.    Paragraphs 1 through 16 are incorporated herein as if set out in full.

18.    On or about May 15, 2014, the ACS board of education adopted Policy JBCB, the "Non-Resident Student Admissions - Policy." This policy gave the ACS superintendent and the ACS board of education the authority to accept an application for enrollment from a non-resident student.

19.    From on or about January 20, 2016 and continuing to the present, ACS was a "public charter school authorizer." As such, ACS had authority to approve or deny applications by groups seeking to form charter schools within the geographic boundaries of ACS.

20.    From in or about the fall of 2016 and continuing to the present, the Athens Renaissance School (hereinafter, "Athens Renaissance") was a virtual and blended K-12 public school operated by ACS. During all times material to this Complaint, Athens Renaissance offered "blended" and "virtual" education models. Students enrolled in a virtual education model did not attend an Athens Renaissance campus and, instead, attended school exclusively through an online learning management system, *i.e.* Odysseyware, which is a software application used for the administration, documentation, tracking, reporting, and delivery of virtual educational courses.

21.    In the fall of 2015, Defendant Trey Holladay offered Marengo Academy: (1) laptop computers; and (2) access to online courses through various learning management systems. In exchange, Marengo Academy would be required to provide ACS student identifying information, transcripts, and grades. ACS officials would then use that information to enroll Marengo Academy students in Athens Renaissance and thus make it appear that the students were full-time ACS non-resident virtual students.

22.     During in or about February, March, and April of 2016, Defendants Trey Holladay and Carter worked to recruit additional private schools to enroll their private school students in Athens Renaissance. Defendants did so by offering the schools: (1) access to Odysseyware; (2) laptop computers; (3) increased internet capabilities; (4) standardized testing; and (5) monetary payments. In exchange, Defendants Trey Holladay and Carter asked the private school officials to provide ACS (though Ed Op, the intermediary) with: (1) student and parent identifying information; (2) academic transcripts; and (3) at the end of each semester, copies of the students' report cards.

23.     On or about May 2 and May 3, 2016, ACS hosted a "Digital Learning Showcase." Defendants Trey Holladay, Carter, and Corkren attended this event. Representatives of Jackson Academy, Pickens Academy, The Lakeside School, and Southern Academy also attended the event. ACS, directly or indirectly, paid for lodging and meals for these private school representatives. During the event, Trey Holladay encouraged private school representatives to associate with ACS in exchange for various benefits.

24.     Thereafter, representatives from the aforementioned four private schools accepted the above-described benefits and, in exchange, provided student information, including names, addresses, Social Security identification numbers and dates of birth to Corkren. Corkren then relayed that information to ACS officials. The private school students were then fraudulently enrolled as full-time Athens Renaissance virtual students for the 2016-2017 school year. Additionally, in or about the summer of 2016, representatives from Marengo Academy, yet again, also agreed to and did provide student information to ACS for the 2016-2017 school year.

25.     Defendants Trey Holladay, Carter, and Corkren then began to use a code to refer to the private schools providing student information to be used for fraudulent enrollment. They

referred to Marengo Academy as "E01." Jackson Academy was "E02." Pickens Academy was "E03." The Lakeside School was "E04." Southern Academy was "E05."

26.     In or about June of 2016, ACS hosted a "Digital Instruction and Planning" training session in Athens. Deborah Holladay presented at this session. Teachers from the following private schools attended the session: Jackson Academy, The Lakeside School, and Marengo Academy. During the session, the private school teachers learned about using Odysseyware.

27.     In or about July of 2016, ACS hosted a second "Digital Instruction and Planning" training session in Athens. Teachers from the following private schools attended the session: Jackson Academy, Pickens Academy, Marengo Academy, The Lakeside School and Southern Academy. During the session, the private school teachers learned about using Odysseyware.

28.     In or about the summer of 2016, Defendant Corkren visited the various campuses of the private schools that had agreed to provide student information to ACS. On some occasions, he delivered laptop computers to the schools. These laptop computers were purchased with ACS funds. Some bore ACS property inventory stickers. Specifically, in or about August and September of 2016, Corkren made the following computer deliveries at the direction of Trey Holladay: (1) Corkren delivered approximately 40 laptop computers to Pickens Academy; (2) Corkren delivered approximately 50 laptop computers to Jackson Academy; (3) Corkren delivered approximately 45 laptop computers to Southern Academy; and (4) Corkren delivered approximately 50 laptop computers to The Lakeside School.

29.     On or about an unknown date, Corkren delivered laptop computers to The Lakeside School here in Barbour County. These laptop computers were the property of Limestone County Schools.

30.    In or about the summer of 2016, Corkren received from officials of the participating private schools completed "Athens City Schools Virtual/Non-Resident Enrollment Forms." Each enrollment form purported to be a document enrolling a particular student in Athens Renaissance. Each enrollment form contained for the subject student: the student's name, the parent or guardian's name, the student's address, the student's grade during the 2016-2017 school year, the student's date of birth, and the student's school.

31.    Each form also contained the following release:

I understand, agree, and request that teachers and administrators at the Athens Renaissance School (as well as instructors and administrators of Ed-Op, Inc.) may provide information concerning any and all educational records of the student named above (including transcript information, class information and grades, disciplinary information, etc.) with all instructors, administrators, employees, and agents related to Ed-Op. I understand that this information may be used by such instructors, administrators, employees, and agents for, among other things, reviewing and discussing (i) the appropriate coursework and schedule, (ii) the performance and progress, and (iii) the grades and credits, of the student with respect to his/her classes with the virtual education program of the Athens Renaissance School. I understand that I may revoke this Consent upon providing written notice to the Athens Renaissance School (or that the student may revoke this Consent after reaching the age of 18), but that until such revocation is made, this Consent will remain in effect and the student's educational records will continue to be provided for the purpose stated above.

32.    At the bottom of each form was a line for a signature of a guardian or authorized official. During in or about the summer of 2016, Corkren advised the private school headmasters or employees that they could sign the forms on behalf of their students. Corkren gave this instruction to the private school officials because Trey Holladay told him that the private school headmasters could sign the forms.

33.    During in or about the summer of 2016: (1) the headmaster of Jackson Academy signed enrollment forms for Jackson Academy students; (2) the assistant headmaster of Pickens

Academy signed enrollment forms for Pickens Academy students; and (3) the headmaster of The Lakeside School signed enrollment forms for Lakeside School students.

34.    Parents or guardians (other than those who happened to be the headmaster or assistant headmaster of a school), **did not** sign the enrollment forms and did not otherwise consent to the transfer of their children's identifying information to ACS.

35.    By in or about August of 2016, Defendant Corkren had collected Athens City Schools Virtual/Non-Resident Enrollment Forms pertaining to almost all of the private school students enrolled at the five participating private schools. Corkren delivered these forms to ACS officials for those officials to use to enroll the students in Athens Renaissance.

36.    Because the private school students were listed in ACS's student information management database, the ASDE counted the private school students when determining ACS's fall 2015 average daily membership. This falsified information resulted in an increased average daily membership for ACS when compared to its fall 2014 average daily membership.

37.    By collecting and storing this data, and sharing it and using it for commercial gain, Defendants both had a duty of care to use reasonable means to secure and safeguard this sensitive information, to prevent disclosure of the information, and to guard the information from theft.

38.    Defendants' duty included a responsibility to safeguard the sensitive information of Plaintiff and Class Members without sharing it.

39.    Defendants also owed a duty of care to Plaintiff and Class Members to provide security consistent with industry standards and the other requirements discussed herein, and to ensure their systems and the personnel responsible for them adequately protected their student's sensitive information.

40.     Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between ASC and its students, which is recognized by laws including, but not limited to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; 34 CFR Part 99 ("FERPA.") Only Defendants were in a position to ensure protection against the harm to Plaintiff and Class Members for identify theft.

41.     Defendants' duty to use reasonable measures also arose under FERPA, pursuant to which Defendants are required to protect the privacy of student education records and maintain parental written permission to disclosure said records. FERPA gives parents certain rights with respect to their children's education records. Parents have the right to inspect student's educational records. Parents have the right to request school correct records which they believe to be inaccurate or misleading. Parents must give written permission in order to release any information from a student's education record. The stolen confidential data at issue in this case constitutes "protected student information" within the meaning of FERPA.

### Named Plaintiff Allegations

42.     John Doe enrolled Jane Doe at Jackson Academy in Alabama.

43.     In or around May 2, 2016, Defendants stole the minor Plaintiff's identity.

44.     Jane Doe was enrolled in the ACS Virtual Program by Defendants without her or her parents' knowledge.

45.     Jane Doe did not even realize she was enrolled in the Virtual Program.

46.     Defendants used Jane Doe's stolen identity to make themselves money taken from the State of Alabama, funneled through ACS, and to LLC's controlled by them.

## Class Allegations

47.     This case is brought as a class action under RULE 23 of the ALABAMA RULES OF CIVIL PROCEDURE.

48.     The Putative Class is defined as follows:

> All individuals who had their privacy invaded and identities stolen by Defendants who then used each student's information to enroll the students in the ACS district and the Virtual Program.

## Numerosity

49.     There are more than fifteen (15) persons in the Putative Class.

50.     Although the Named Plaintiff does not presently know the names of all Putative Class Members, their identities and addresses can be readily ascertained from Defendants.

51.     The claims of the Named Plaintiff a typical of the claims of the Class inasmuch as the Named Plaintiff is a member of the Class of victims described herein. Both the Named Plaintiff and the Putative Class were subject to a common scheme and course of conduct by Defendants as described herein.

52.     The Named Plaintiff has no interests adverse to the interests of other Class Members.

53.     The Named Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in prosecution of class actions and complex litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.

54.     This action is also appropriate as a class action pursuant to RULE 23(b)(1)(A) and/or (b)(1)(B) as the Named Plaintiff seeks equitable relief and corresponding other relief for the entire

Class. Hence, a class action is the most appropriate vehicle for this case as the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants and their required adherence to applicable law. Further, given the financial limitations of Defendants, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests given that this is a limited fund case.

### Predominance of Common Issues

55.    This action is also appropriate as a class action pursuant to RULE 23(b)(2) and/or (3). There are numerous and substantial questions of law and fact common to all Putative Class Members which control this litigation and which predominate over any individual issues. Included within the common questions are:

a)  Whether Defendants obtained the Named Plaintiff and Class Members' names, dates of birth, and Social Security identification numbers without Named Plaintiff and Class Members' knowledge;

b)  Whether Defendants did so for economic gain;

c)  Whether Defendants failed to supervise and train their employees and failed to prevent their agents from violating Alabama law;

d)  Whether the Named Plaintiff and Class Members are entitled to specific performance, injunctive relief, or other equitable relief against Defendants;

e)  Whether the Named Plaintiff and Class Members are entitled to an award of damages against Defendants;

f)  Whether the applicable insurance policies represent a limited fund;

g)  Whether the Named Plaintiff and Class Members are entitled to equitable relief against Defendants;

h) Whether the Named Plaintiff and Class Members are entitled to an award of attorney fees against Defendants; and

i) Whether the Named Plaintiff and Class Members have sustained damages and the proper measure of damages.

### Adequacy

56.    Plaintiff will adequately represent and protect the interests of the Class Members. Plaintiff does not have an interest that conflicts with the interest of the Class Members. Plaintiff has retained counsel with substantial experience in both prosecuting class actions and in prosecuting claims against auto manufacturers for vehicle defects. Plaintiff and his counsel are committed to vigorous prosecution of these claims and have the financial wherewithal to do so.

### Superiority

57.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy and to ensure an equitable distribution of the available insurance proceeds. Absent a class action, the Named Plaintiff and the Class Members may not receive an equitable division of the insurance policies, which constitute a limited fund available to compensate them for their harm suffered.

58.    Most individual Putative Class Members have little ability to prosecute an individual action, due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages suffered by individual Putative Class Members.

59.    This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

60.    This action presents no difficulty that would impede its management by the Court as a class action and a class action is superior to other available methods for the air and efficient

adjudication of the claims and division of the limited insurance funds available.

**CAUSES OF ACTION**

**Count I**

**Constitutional Violation of a Right to Privacy**
**42 U.S.C. § 1983**

61.    Paragraphs 1 through 60 are incorporated herein as if set out in full.

62.    Defendants are all state actors and/or employees.

63.    Plaintiffs and the putative Class have a privacy interest in their identifying information (e.g. Social Security numbers, dates of birth, addresses, names, and other information necessary to enroll students).

64.    Defendants' actions have violated the Takings Clause against Plaintiff and Class Members by willfully stealing private identity information, which were theirs under State law.

65.    By refusing to comply State law, Defendants violated the rights of Plaintiff and Class Members by stealing Plaintiff's and the putative Class' private information in violation of the Due Process Clause as applied to the Defendants under the Fifth and Fourteenth Amendments to the United States Constitution.

66.    Defendants' actions violated 42 U.S.C. § 1983, as well as the rights of Plaintiff and the Class Members under the Takings Clause and the Due Process Clauses as articulated in the Fifth and the Fourteenth Amendments of the Constitution of the United States.

67.    As a direct and proximate result of the unreasonable and illegal action of Defendants, the Plaintiff has suffered economic harm, mental anguish, and emotional distress.

## Count II

### Civil Racketeer Influenced and Corrupt Organizations Act
### 18 U.S.C. §§ 1962, *et. seq.*

68.     Paragraphs 1 through 60 are incorporated herein as if set out in full.

69.     Defendants, as well as others, both known and unknown, did knowingly and intentionally agree with themselves and others to perform ongoing criminal acts in an effort to execute a scheme with the intent to defraud, knowingly and willfully devised, and attempted to devise, and participated in, with knowledge of its fraudulent nature, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

70.     Defendants willingly and knowingly performed racketeering activity as part of an ongoing criminal enterprise, which is chargeable under State law. 18 U.S.C. §§ 1028, 1341, 1343, 1344, and 1952.

71.     At least two acts of racketeering occurred since 2016, which is actionable under State law. 18 U.S.C. § 1962.

72.     Defendants owed a duty to Plaintiff and the putative Class to not take personal and private information from Plaintiff and Putative Class members and submitting that information to Athens City Schools Virtual/Non-Resident Enrollment Forms.

73.     Defendants breached that duty by taking personal and private information from Plaintiff and Putative Class members and submitting that information to Athens City Schools Virtual/Non-Resident Enrollment Forms. Each enrollment form purported to be a document enrolling a particular student in Athens Renaissance. Each enrollment form contained for the subject student: the student's name, the parent or guardian's name, the student's address, the student's grade during the 2016- 2017 school year, the student's date of birth, the student's Social

Security identification number and the student's school.

74.    Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the common law and the statutes and regulations, but also because they are bound by, and have committed to comply with, industry standards for the protection of confidential Sensitive information.

75.    As a direct and proximate result of the unreasonable and illegal action of Defendants, the Plaintiff has suffered from economic and other harm.

## Count III

## Invasion of Privacy

76.    Paragraphs 1 through 60 are incorporated herein as if set out in full.

77.    Defendants owed a duty to Plaintiff and the putative Class to not take personal and private information from Plaintiff and Putative Class members and submitting that information to Athens City Schools Virtual/Non-Resident Enrollment Forms.

78.    Defendants breached that duty by taking personal and private information from Plaintiff and Putative Class members and submitting that information to Athens City Schools Virtual/Non-Resident Enrollment Forms. Each enrollment form purported to be a document enrolling a particular student in Athens Renaissance. Each enrollment form contained for the subject student: the student's name, the parent or guardian's name, the student's address, the student's grade during the 2016- 2017 school year, the student's date of birth, the student's Social Security identification number and the student's school.

79.    The nature of the intrusions into Plaintiff's and the putative Class' privacy, referred to herein, was so outrageous as to cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

80.    As a direct and proximate result of the unreasonable and illegal action of Defendants, Plaintiff and the putative Class have suffered economic damage, mental anguish, and emotional distress.

## Count IV

## Negligence

81.    Paragraphs 1 through 60 are incorporated herein as if set out in full.

82.    As articulated above, Defendants owed a duty pursuant to both federal and State of Alabama law to Plaintiff and the putative Class to not take personal and private information from Plaintiff and putative Class members and submitting that information to ACS's Virtual Program.

83.    Defendants breached that duty by stealing personal and private information from Plaintiff and putative Class members and submitting that information to ACS and the Virtual Program. Each enrollment form purported to be a document enrolling a particular student in Athens Renaissance. Each enrollment form contained for the subject student: the student's name, social security number, the parent or guardian's name, the student's address, the student's grade during the 2016- 2017 school year, the student's date of birth, and the student's school.

84.    Defendants breached their common law, statutory and other duties—and thus, were negligent—by failing to use reasonable measures to protect patients' Sensitive information.

85.    The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a.    failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class members' Sensitive information;

b.    allowing unauthorized distribution of Plaintiffs' and Class members' Sensitive information; and

    c.   failing to advise Plaintiff and other Class Members about the taking in a timely manner so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

86.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered economic harm, emotional distress, and mental anguish.

## Count V

## Wantonness

87.    Paragraphs 1 through 60 are incorporated herein as if set out in full.

88.    As laid out above, Defendants owed a duty to Plaintiff to exercise reasonable care when trusted with the personal identifiable information of Plaintiff and the putative Class.

89.    Defendants recklessly and/or wantonly breached this duty by providing Sensitive information about the Plaintiff and the putative Class with an intent to use the said information for personal gain.

90.    The result of said recklessness and/or wantonness was injury to Plaintiff's personal information, to which she did not consent.

91.    As a direct and proximate result of Defendants' negligence, Plaintiff and the putative Class have suffered economic harm, emotional distress, and mental anguish.

## Count VI

## Unjust Enrichment

92.    Paragraphs 1 through 60 are incorporated herein as if set out in full.

93.    Plaintiff and Class Members have had their identities stolen at the hands of Defendants. Plaintiff and Class Members would not have had their identities stolen had they known of the fraudulent scheme by Defendants.

94.     Defendants have made a profit at the expense of Plaintiff and Class Members. The profit would have been reduced or eliminated had the Plaintiff and Class Members had not had their identities stolen because of the fraudulent scheme by Defendants.

95.     Further, Plaintiff and the putative Class seek equitable relief, including, but not limited to injunctive relief as the Court deems appropriate, including, but not limited to, equitable accounting, creation of a construction trust, disgorgement,  of all or part of the ill-gotten profits Defendants have received from stealing the identities of Plaintiff and Class Members via resulting restitution.

**Count VII**

**Civil Conspiracy**

96.     Paragraphs 1 through 60 are incorporated herein as if set out in full.

97.     It was a purpose of the conspiracy for ACS, LCS, and CCS to obtain greater state funding allocations through the Virtual Program than they would otherwise have been entitled to by purporting to enroll into their respective virtual schools students who were in fact full-time students of brick-and-mortar private schools and who were not taking even close to what could be considered full course loads through a virtual education program. ACS would then transfer the excess money to the Defendants' LLCs and, ultimately, to the individual Defendants.

98.     It was a purpose of the conspiracy for Defendants Trey Holladay, Deborah Holladay, Carter, Corkren, Tutt, and Sisk to obtain, directly and indirectly for their own personal use, portions of the increased revenue generated for ACS by the fraudulent enrollment of private school students in the Virtual Program.

99.     Beginning in or about February of 2016 and continuing until in or about August of 2018, in Montgomery County, within the Middle District of Alabama, and elsewhere, Defendants,

as well as others, both known and unknown, did knowingly and intentionally conspire, combine, and agree with themselves and others to commit offenses against Plaintiff and the putative Class.

100.    It was an object of the conspiracy to knowingly and willfully execute and attempt to execute a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing that scheme, transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343; and

101.    As a direct and proximate result of Defendants' civil conspiracy, Plaintiff and the putative Class have suffered economic harm, emotional distress, and mental anguish.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of them self and putative Class Members, request this Court enter an Order for the following relief against Defendants as follows:

a.    Declare Defendants' actions, as described above, implicate guarantees and rights found in the U.S. Constitution, and constitute invasion of privacy, negligence, wantonness, civil RICO, unjust enrichment and civil conspiracy;

b.    Declare Defendants' conduct violated State of Alabama and U.S. law;

c.    Certify the proposed Class pursuant to RULE 23(a) and (b)(2) and/or (3);

d.    Appoint Plaintiff as a Class representative;

e.    Appoint the undersigned counsel as counsel for the Class;

f.    Award to Plaintiff and the Class Members of compensatory and punitive damages, as allowed by law;

g.      Award to Plaintiff and the Class Members attorneys' fees and costs, as allowed by law and/or equity;

h.      Enter an injunction directing Defendants to perform an equitable accounting over the monies improperly charged and unjustly retained, create a constructive trust, and disgorge the *res* of said constructive trust to the Putative Class members via resulting restitution;

i.      To the extent the members of the Putative Class members cannot be located, said disgorgement via restitution should be *cy pres*; and

j.      Order such other and further relief, including equitable, as the Court deems necessary, just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted this the 16th day of April 2021.

*/s/ Eric J. Artrip*
Eric J. Artrip (ART001)
MASTANDO & ARTRIP, LLC
301 Washington St., Suite 302
Huntsville, Alabama 35801
Telephone:    (256) 532-2222
*artrip@mastandoartrip.com*

*Attorney for Plaintiffs & Putative Class*

*/s/ Will League*
Will League (LEA013)
SINIARD, TIMBERLAKE & LEAGUE, P.C.
125 Holmes Ave., NW
Huntsville, Al 35801
Telephone: (256) 536-0770
*league@law-injury.com*

*Attorney for Plaintiffs & Putative Class*

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL**

| | |
|---|---|
| **William Lee Holladay, III**<br>**301 S. Clinton St.**<br>**Athens, AL 35611**<br><br>**Deborah Irby Holladay**<br>**301 S. Clinton St.**<br>**Athens, AL 35611**<br><br>**William Richard Carter, Jr.**<br>**15829 Estate Dr.**<br>**Athens, AL 35613**<br><br>**Gregory Earl Corkren**<br>**11963 Grandview Dr.**<br>**Northport, AL 35475-2651**<br><br>**David Webb Tutt**<br>**1307 Maria Ave.**<br>**Demopolis, AL 36732-3419**<br><br>**Thomas Michael Sisk**<br>**115 Whitfield Dr.**<br>**Toney, AL 35773**<br><br>**TUTT EDUCATIONAL SERVICES, LLC**<br>**c/o David W. Tutt, Registered Agent**<br>**1307 Maria Ave.**<br>**Demopolis, AL 36732**<br><br>**SAGE PROFESSIONAL DEVELOPMENT, LLC**<br>**c/o Deborah Holladay, Registered Agent**<br>**301 S. Clinton St.**<br>**Athens, AL 35611**<br><br>**INTEGRA VENTURES, LLC**<br>**c/o Keith Womak, Registered Agent**<br>**211 Riverwood Dr.**<br>**Florence, AL 35634** | **Educational Opportunities and Management LLC**<br>**c/o Greg Corkren**<br>**1733 Ridgedale Drive**<br>**Tuscaloosa, AL 35406** |

*/s/ Eric J. Artrip*
Eric J. Artrip (ART001)
*Attorney for Plaintiff*